UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN W. CORBETT, | CASE NO. 5:15CV1035 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| v. | Magistrate Judge George J. Limbert |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | |

Plaintiff John W. Corbett ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying his application for Supplemental Security Income ("SSI").  ECF Dkt. #1.  In his brief on the merits, filed on September 9, 2015, Plaintiff asserts that the administrative law judge ("ALJ") erred in his decision because he failed to comply with the treating physician rule and the Social Security Rules.  ECF Dkt. #12.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and DISMISS the instant case with prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

On November 2, 2011, Plaintiff filed an application for SSI.  ECF Dkt. #11 ("Tr.") at 17.[2] The Social Security Administration denied Plaintiff's application initially and upon reconsideration. *Id.*  Plaintiff requested a hearing before an ALJ.  *Id.*  On November 7, 2013, the ALJ held the requested hearing.  *Id.*

---

[1] On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled.  This allows the Court to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

On December 11, 2013, the ALJ denied Plaintiff's application for SSI. Tr. at 14. The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 2, 2011. *Id.* at 19. Continuing, the ALJ determined that Plaintiff suffered from the following severe impairments: major depressive disorder; fibromyalgia; obesity; obstructive sleep apnea; posttraumatic stress disorder; bilateral carpal tunnel syndrome; and dysthymic disorder. *Id.* The ALJ opined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 20. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that he could: occasionally climb ramps and stairs, but not climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; frequently perform fine and gross manipulation with his upper extremities; understand, remember, and carry out simple instructions and perform simple, routine tasks; perform low-stress work defined as work not subjecting him to strict quotas or fast-paced high production demands, or work not requiring negotiation, arbitration, confrontation, directing the work of others, or being responsible for the safety of others; adjust to occasional workplace changes; and have superficial contact with the public and occasional superficial interaction with coworkers. *Id.* at 22. The ALJ found that Plaintiff was unable to perform any past relevant work, was a younger individual between the ages of eighteen and forty-nine on the date his application was filed, had at least a high school education, and that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled whether or not Plaintiff had transferable job skills. *Id.* at 24-25. Continuing, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 25. Finally, the ALJ stated that Plaintiff had not been under a disability, as defined in the Social Security Act, since November 2, 2011, the date Plaintiff's application was filed. *Id.* at 26.

On May 22, 2015, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on September 9, 2015, asserting the following assignment of error:

>    1. Did the ALJ err by creating an RFC finding that was not supported by substantial evidence.

ECF Dkt. #12 at 1.  Specifically, Plaintiff argues that:

>    A. The ALJ failed to comply with the treating physician rule and S.S.R. 96-8p when Dr. Farrer's opinion was not given great weight, and limitations were excluded without providing "good reasons."

ECF Dkt. #12 at 6.  On December 7, 2015, Defendant filed a response brief.  ECF Dkt. #16.  Plaintiff filed a reply brief on December 16, 2015.  ECF Dkt. #17.

## II. **SUMMARY OF THE RELEVANT PORTIONS OF THE ALJ'S DECISION**

Plaintiff 's only assignment of error relates to the ALJ's evaluation of the opinion of Dr. Erin Farrer, Ph.D., as to his mental impairments.  ECF Dkt. #12 at 6-8.  Accordingly, only the relevant portions of the ALJ's decision regarding Plaintiff's mental impairments will be discussed herein.

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since November 2, 2011, the date his application was filed.  Tr. at 20.  Next, the ALJ found that Plaintiff suffered from severe impairments, as discussed above.  *Id.*

When determining whether Plaintiff had an impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ looked to Listing 12.04.  Tr. at 21.  The ALJ indicated that he considered whether Plaintiff's mental impairments satisfied the criteria of 12.04(B) by resulting in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  *Id.*  The ALJ determined that Plaintiff had mild restrictions in his activities of daily living.  To support this determination, the ALJ indicated that Plaintiff had custody of his niece and cared for her on a daily basis, including feeding and bathing the child.  *Id.*  The ALJ noted that Plaintiff's mother came to his house to help care for the child and stayed the night occasionally.  *Id.*  Continuing, the ALJ indicated that Plaintiff cooked when his mother was not at his house and that Plaintiff did some of the grocery shopping and other chores around the house.  *Id.*  The ALJ stated that Plaintiff's hobbies included reading, watching television, and drawing.  *Id.*

Next, the ALJ found that Plaintiff had moderate difficulties related to social functioning. Tr. at 21. The ALJ stated that Plaintiff experienced symptoms of anxiety, however, he was able to go grocery shopping. *Id.* Continuing, the ALJ noted that Plaintiff reported that he had trouble with losing his temper and saying inappropriate things, and had no friends. *Id.* Further, the ALJ indicated that Plaintiff had been married three times, lived in a house with his niece, had recently gotten custody of his niece, and was frequently visited by his mother. *Id.*

Regarding concentration, persistence, or pace, the ALJ determined that Plaintiff had moderate difficulties. Tr. at 21. The ALJ stated that Plaintiff reported some memory and concentration problems due to fatigue. Continuing, the ALJ indicated that Plaintiff had a GED, was able to read and write, maintained a driver's license, was able to drive, and watched television. *Id.* Further, the ALJ stated that Plaintiff was able to pay bills, count change, use a checkbook, and handle a savings account. *Id.* The ALJ determined that Plaintiff had not experienced any episodes of decompensation. *Id.* Accordingly, the ALJ found that Plaintiff's mental impairments did not cause at least two of the marked limitations, or one marked limitation and repeated episodes of decompensation, and thus the criteria of 12.04(B) were not satisfied.

The ALJ addressed the opinion of Dr. Farrer, Plaintiff's treating physician, when discussing Plaintiff's RFC. Tr. at 23-24. During this discussion, the ALJ began by noting that Plaintiff had been visiting Dr. Farrer for therapy for several years and had been diagnosed with insomnia, dysthymic disorder, and major depressive disorder, severe, without psychotic behavior. *Id.* at 23. The ALJ stated that the record reflected that Plaintiff suffered from the stressors of limited social support, caring for his niece, financial concerns, and an ill girlfriend. *Id.* Continuing, the ALJ noted that Plaintiff's symptoms of depression appeared to be secondary to pain, insomnia, and financial problems. *Id.* at 23-24. The ALJ indicated that Plaintiff's mental status examinations were normal, except for generally mild to moderate depression and anxiety, and that Plaintiff's global assessment of functioning ("GAF") scores typically fell in the fifties. *Id.* at 24. The ALJ stated that Plaintiff took Cymbalta in the past, but he did not want any medications as he wanted to handle his depression and anxiety without medication. *Id.* Next, the ALJ indicated that Plaintiff reported that

he was doing better after he stopped taking Savella in September 2012, and that Plaintiff reported that his anxiety was better in September 2013. *Id.*

The ALJ found that, despite his alleged symptoms, the record reflected that Plaintiff engaged in fairly significant activities. Tr. at 24. To support this finding, the ALJ indicated that Plaintiff: was trying to learn computer programming in March 2012; was looking forward to visiting with family in December 2012; got a fish tank in February 2013 and reported enjoying the fish tank in March 2013; enjoyed watching movies; became involved with the Moose Club and signed up to play bocce ball in April 2013; reported that he was playing bocce ball once a week and riding his stationary bike once a week in July 2013; and fixed his motorcycle and was enjoying riding in August 2013. *Id.*

The ALJ discussed Dr. Farrer's July 3, 2012 opinion, indicating that Dr. Farrer opined that Plaintiff had low frustration tolerance and could easily become upset, had pain that caused him to take longer to perform normal activities, and avoided social interactions due to low frustration tolerance and hypervigilance. Tr. at 24. Next, the ALJ discussed Dr. Farrer's October 8, 2013 form regarding Plaintiff's ability to perform mental work-related activities. *Id.* The ALJ stated that Dr. Farrer indicated that Plaintiff had poor-to-no useful ability in several areas, particularly dealing with others. *Id.* Continuing, the ALJ noted that Dr. Farrer opined that Plaintiff's symptoms affected his tolerance and anxiety, could lead to anger and irritability, and could interfere with his self-esteem and confidence, thus increasing Plaintiff's frustration and concentration problems. *Id.* The ALJ also stated that Dr. Farrer marked that Plaintiff would likely miss work more than three times per month. *Id.* The ALJ accorded Dr. Farrer's opinion some weight, determining that the records reflected that Plaintiff was able to maintain some social activities and was able to care for his niece. The ALJ found that the record did not support the extreme limitations prescribed by Dr. Farrer because Plaintiff was capable of performing simple, routine, low-stress tasks with only superficial interaction with others. *Id.*

Following the discussion of the weight accorded to Dr. Farrer's opinion, the ALJ stated that Plaintiff was unable to perform past relevant work, was a younger individual between the ages of eighteen and forty-nine on the date his application was filed, had at least a high-school education

-5-

and could communicate in English, and that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled whether or not Plaintiff had transferable job skills. Tr. at 24.25.

Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. at 25. The ALJ indicated that Plaintiff had the RFC to perform the full range of light work with the limitations stated above. *Id.* Based upon these limitations, the vocational expert testified that jobs existed in significant numbers in the national economy that Plaintiff was capable of performing, listing the jobs of cleaner/housekeeper, machine tender, and packager as representative occupations that Plaintiff could perform. *Id.* at 25-26. Accordingly, the ALJ made the finding that Plaintiff had not been under a disability, as defined in the Social Security Act, since November 2, 2011, the date his application was filed. *Id.* at 26.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

### V.  LAW AND ANALYSIS

Plaintiff's sole assignment of error asserts that the ALJ erred by creating a RFC finding that was not supported by substantial evidence.  ECF Dkt. #12 at 5.  Specifically, Plaintiff contends that the ALJ failed to comply with the treating physician rule and S.S.R. 96-8p when Dr. Farrer's

-7-

opinion was not given great weight and when limitations were excluded without providing good reasons for the exclusion. *Id.* at 6. Plaintiff acknowledges that the ALJ gave an explanation as to why only some weight was given to Dr. Farrer's opinion, but asserts that the reasons given in the explanation were not good reasons for discounting the opinion, as required by the treating physician rule. *Id.* Plaintiff asserts that all of the factors outlined in 20 C.F.R. § 404.1527(d) weigh in favor of Dr. Farrer's opinion. *Id.* at 7; *see Wilson v. Comm'r of Soc. Sec.,* 379 F.3d 541, 544 (6th Cir. 2004). Plaintiff cites to *Wilson* to outline the relevant factors. *Id.* In *Wilson*, the Sixth Circuit held:

> If the opinion of a treating source is not accorded controlling weight, and ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.

*Wilson*, 379 F.3d at 544. Plaintiff contends that the reasons provided by the ALJ for according only some weight to Dr. Farrer's opinion did not address the factors as prescribed in *Wilson*. ECF Dkt. #12 at 7.

Next, Plaintiff argues that Dr. Farrer's opinion showed that Plaintiff had good-to-fair social skills, and therefore the ALJ's use of Plaintiff's minimal social contact as a reason for according only some weight to Dr. Farrer's opinion is not a good reason because Dr. Farrer's RFC finding was not contradicted. ECF Dkt. #12 at 7. Plaintiff asserts that Dr. Farrer was aware of the circumstances surrounding Plaintiff's care for his niece when she issued the opinion, and that there was no evidence that Plaintiff cared for the child by himself. *Id.*

Plaintiff asserts that the limitations imposed by Dr. Farrer would eliminate Plaintiff's employability, per the vocational expert, and that Plaintiff having a minimal social life and receiving help while caring for a child did not address or detract from the limitations imposed by Dr. Farrer. ECF Dkt. #12 at 8-9. Finally, Plaintiff contends that the ALJ did not weigh the evidence regarding Plaintiff's RFC limitations, and instead cherry-picked limitations from the RFC while failing to give good reasons as to why such other limitations were excluded. *Id.* at 9.

-8-

Defendant contends that the ALJ reasonably accorded some weight to Dr. Farrer's opinion. ECF Dkt. #16 at 9. To support this position, Defendant states that the ALJ acknowledged Dr. Farrer's opinion that Plaintiff had low frustration tolerance, could become upset or frustrated easily, took longer to complete daily tasks because of his pain, and avoided social interactions due to low frustration tolerance. *Id.* (citing Tr. at 24). Continuing, Defendant indicates that the ALJ also recounted Dr. Farrer's October 2013 opinion that Plaintiff had poor-to-no useful ability in several areas, particularly in dealing with others. *Id.* Defendant also indicates that the ALJ looked to the portion of Dr. Farrer's October 2013 opinion stating that Plaintiff's symptoms affected his tolerance and anxiety, and could lead to anger and interfere with Plaintiff's self-esteem and confidence, increasing frustration and concentration problems. *Id.* Continuing, Defendant notes that the ALJ noted that Plaintiff would likely miss work more than three times a month. *Id.*

Next, Defendant argues that the ALJ was not required to go through all of the factors in 20 C.F.R. § 416.927(d) when weighing medical opinions, and, moreover, the ALJ did go through most of the factors. ECF Dkt. #16 at 10. Defendant asserts that the ALJ acknowledged that Dr. Farrer treated Plaintiff for several years, and that the ALJ was aware of the nature and extent of the treating relationship as evidenced by the fact that the ALJ recounted numerous treatment notes. *Id.* Further, Defendant contends that the ALJ addressed the supportability of Dr. Farrer's opinion, explaining that the treatment records did not support the imposed limitations. *Id.* at 10-11.

Defendant asserts that the ALJ properly noted Plaintiff's activities and reasonably concluded that those activities detracted from Plaintiff's claimed limitations. ECF Dkt. #16 at 11. In response to Plaintiff's assertions regarding the assistance provided by Plaintiff's mother, Defendant contends that the ALJ expressly acknowledged that Plaintiff's mother came to his house to help care for his niece and discussed her role in caring for the child. *Id.*

In response to Plaintiff's argument that the ALJ should have addressed certain points of Dr. Farrer's opinion, Defendant contends:

> [An ALJ is] not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only the findings of fact and the reasons for the decision.

-9-

ECF Dkt. #16 at 11-12 (citing *Bailey v. Comm'r of Soc. Sec.*, 413 Fed.Appx. 853, 855 (6th Cir. 2011) (internal citation omitted)).  Defendant asserts that the ALJ sufficiently explained his decision to accord some weight to Dr. Farrer's opinion.  *Id.* at 12.

Plaintiff's arguments are without merit.  Defendant is correct in asserting that the ALJ considered the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record as a whole.  The ALJ indicated that Plaintiff had been visiting Dr. Farrer for several years, and discussed Dr. Farrer's diagnoses, including stressors, the results of mental status examinations, GAF scores, and medication history.  Tr. at 23-24.  This analysis demonstrates that the ALJ considered the treatment relationship and the frequency of examination, as well as the nature and extent of the treatment relationship.  The ALJ discussed the supportability of Dr. Farrer's opinion, as shown by the discussion surrounding Plaintiff's diagnoses and the ALJ's determination that Plaintiff's symptoms of depression appear to be secondary to pain, insomnia, and financial problems.  *Id.*  Further, the ALJ noted that Plaintiff's mental status examinations were normal except for generally mild to moderate depression and anxiety.  *Id.* at 24.  These same considerations, along with the ALJ's discussion of Plaintiff's GAF scores, the discussion of Plaintiff's decision to handle his depression without medication, and reports that he was doing better, demonstrate that the ALJ considered the consistency of the opinion with the record as a whole.  *See id.*  Further, the ALJ was aware of Dr. Farrer's specialization, as shown by the ALJ recognition that Dr. Farrer held a Ph.D. and provided therapy, and Plaintiff makes no argument that the specialization factor weighs in his favor.

Regarding Plaintiff's second argument, the ALJ provided an adequate explanation of how Plaintiff's social activities detracted from the claimed limitations.  *See* Tr. at 24.  The ALJ indicated that Plaintiff: was trying to learn computer programming; looking forward to getting together with family; enjoyed his fish tank and watching movies; became involved with the Moose Club; played bocce ball once a week; rode his stationary bike once a week; and fixed his motorcycle and enjoyed going for rides.  *Id.*  The ALJ then outlined the extreme limitations placed on Plaintiff by Dr. Farrer, and found that the record did not reflect such extreme limitations.  Additionally, regarding

Plaintiff's argument insofar as is pertains to the role Plaintiff's mother took in caring for his niece, the ALJ was clearly aware of the role Plaintiff's mother played in caring for his niece as that role was expressly discussed by the ALJ in his decision. *Id.* at 21.

The ALJ did not impermissibly cherry-pick limitations from the RFC, as alleged by Plaintiff. The ALJ sufficiently explained the limitations prescribed by Dr. Farrer after laying out the evidence and explaining how the evidence supported his finding.  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found a plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton*, 246 F.3d at 773.  Substantial evidence supports the ALJ's denial of benefits in this case, and thus the fact that the ALJ did not expressly address every limitation imposed by Dr. Farrer is not grounds for reversing the decision of the ALJ.  Moreover, the ALJ is not required to analyze the relevance of each piece of evidence individually. *Bailey*, 413 Fed.Appx. at 855 (citing 20 C.F.R. § 404.953).  "Instead, the regulations state that the decision must only contain 'the findings of facts and the reasons for the decision.'" *Id.*  The ALJ reasonably explained his decision to accord only some weight to Dr. Farrer's opinion and that decision was supported by substantial evidence.  Accordingly, the undersigned recommends that the ALJ's decision be affirmed.

## **VI.    CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and DISMISS the instant case with prejudice.

DATE: May 16, 2016                             */s/George J. Limbert*
                                                                GEORGE J. LIMBERT
                                                                UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).